TRI-CITY BEER COMPANY, APPELLANT, v. NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE.

237 N. W. 2d 852

Filed January 22, 1976. No. 40064.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellant.

Paul L. Douglas, Attorney General, and Robert R. Camp, for appellee.

Heard before SPENCER, NEWTON, and CLINTON, JJ., and HENDRIX and BUCKLEY, District Judges.

HENDRIX, District Judge.

The Tri-City Beer Company, plaintiff, appeals from

the judgment of the District Court for Lancaster County, Nebraska, affirming the action of the Nebraska Liquor Control Commission in suspending the license of the plaintiff for 7 days for an alleged violation of section 53-169, R. R. S. 1943. We affirm.

The Tri-City Beer Company is the holder of a wholesale distributor of beer license. Charles Lee Parks is the holder of a retail package liquor license. In about November 1972, the owner of the Tri-City Beer Company, John Folsum, brought a portion of a beer tapper to the business premises of Charles Lee Parks in Grand Island, Nebraska. The tapper was called a "jockey box." There was furnished a 5-gallon bucket with a Miller High Life decal displayed on the bucket. There was an opening in the front of the bucket and a Falstaff spigot was attached thereto by means of a coupling. There were coils of plastic tubing inside the bucket through which beer could flow to the spigot. At the other end of the coils there was a coupling at the top and back side of the bucket. There was also supplied a black rubber or plastic tubing with a special fitting which could be attached to the back side coupling and into a keg of beer with a special fitting on the tubing for that purpose. The lid for the bucket was supplied, but the tapping equipment and $CO_2$ regulator were not. The jockey box had an intrinsic value for tapping a keg of beer and could be used at such functions as picnics, parties, weddings, and similar functions. The jockey box had previously been used for that purpose in Kearney, Nebraska. In this case, however, it was not used for the purpose of drawing beer, but was placed on display on top of a stack of Miller High Life beer in Mr. Parks' place of business. It was used only for display purposes, and the licensees testified that such was their intention.

At the hearing before the Nebraska Liquor Control Commission, a written statement of Charles Lee Parks was admitted into evidence, over objection, upon his di-

rect examination by the commission. It was offered to the commission after Mr. Parks denied that Mr. Folsum had offered to sell him the jockey box for $75. The statement contained the words, "Folsum advised that when he Folsum had it complete I would have to pay him about $75, for the whole unit, if I Parks wanted this unit."

The substantive question presented to this court is whether the jockey box constituted an "advertising sign" under the statutes of the State of Nebraska. The furnishing of equipment is prohibited in section 53-169(1), R. R. S. 1943, which states in part: "No * * * distributor, or wholesaler shall * * * (a) * * * supply, furnish, * * * loan * * * any * * * equipment on the premises of a place of business of another licensee authorized under this act to sell alcoholic liquor at retail * * *." The furnishing of interior decorations are likewise prohibited in section 53-169(2), R. R. S. 1943, but an exception is made for advertising signs for inside use costing less than $100. This statute states in part: "(2) No * * * distributor, or wholesaler shall * * * furnish, * * * lend, * * * any interior decorations other than advertising signs * * *."

It is concluded that the jockey box is not an advertising sign. It was constructed for tapping beer, it had been used for tapping beer, and with the $CO_2$ gas, regulator, and tapping equipment, it was capable of being used again for tapping beer. The Miller High Life decal and the Falstaff spigot added some measure of advertising, of course, but did not change the essential character of the jockey box. It is still an apparatus to remove and cool beer from kegs. Its display does not change the inherent nature of the item. Many products and pieces of equipment bear signs and seals and are placed on display by a retailer. This does not make them advertising signs. Finally, the stated intent of the licensees that the jockey box was to be used for display purposes, together with its use for such purposes, do not make it

an advertising sign. Both licensees were aware of the purpose for which it had and could be used, and they knew that it was not a sign, but a piece of equipment. For a violation, the law only requires that the item be "equipment" and "furnished." Both were shown by competent evidence.

The procedural question presented to this court pertains to the receipt in evidence of the statement of Mr. Parks. Mr. Parks was not a party to the action, but may be impeached as a witness by the introduction of statements contrary to those made in court. Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588. At least the same latitude would be granted at an administrative tribunal. While Mr. Parks was a witness for the commission, under these and other proper circumstances impeachment will lie. Mantell v. State, 141 Neb. 15, 2 N. W. 2d 586. The statement was therefore admissible for the purpose of impeachment at least, and particularly in a hearing before an administrative tribunal. The statement was not required as substantive evidence of the fact declared by the commission. No error can be predicated upon the receipt of the document.

We find that the commission's findings were supported by substantial evidence and that the District Court has applied proper statutory criteria in its review of the commission's decision. The 20's, Inc. v. Nebraska Liquor Control Commission, 190 Neb. 761, 212 N. W. 2d 344.

The penalty prescribed by the commission, a suspension of 7 days, is a reasonable penalty.

AFFIRMED.